{¶ 22} Respectfully, I dissent because I do not accept the majority's analysis and the conclusion it reaches based upon that analysis.
 {¶ 23} First, I disagree with the majority's decision to reverse the trial court on the grounds the lower court lost subject matter jurisdiction upon remand for the completion of Summers' medical examination. The entire basis for the majority's opinion rests on the trial court's January 20, 2000 order for a medical exam.
 {¶ 24} First I note that the majority has unilaterally decided to ignore the errors defendants, Village of Highland Hills and its Personnel Board of Review (together, "Highland") raise and, instead, has selected its own route for reversal. When the trial court remanded the matter for completion of Summers' medical examination, Highland never objected, nor has Highland raised this order here on appeal.[2] Further, the order was perfectly consistent with this court's previous decision in Summersv. Village of Highland Hills (July 29, 1999), Cuyahoga App. No. 74437, 1999 Ohio App. LEXIS 3506.[3]
 {¶ 25} The majority argues: "[o]nce it remanded the matter to the personnel board of review, the common pleas court had no further power to act in the appeal" * * * [and] * * * the "common pleas court had no jurisdiction to order Summers' reinstatement, back pay, and attorney fees after it remanded the matter * * *." The majority then concludes the lower court had no authority to address a motion to show cause; instead, the majority would restrict the remedy to a mandamus. I disagree.
 {¶ 26} The position of the court of common pleas in an administrative appeal is somewhat unique and the scope of its jurisdiction is not as narrow as the majority believes. Quite recently, the Ohio Supreme Court explained the effect a remand by a common pleas court has on its continuing jurisdiction in an administrative appeal pursuant to R.C. 2506.04. State ex rel. Village of Chagrin Falls v. GeaugaCounty Board of Commissioners (2002), 96 Ohio St.3d 400, 775 N.E.2d 512. In the Chagrin Falls case, appellant village petitioned the board to approve an annex of land from a neighboring township. The village's petition was denied by the board, but the village did not appeal this decision.
 {¶ 27} More than two years later, the village filed its second petition, which was also denied by the board. The village filed an administrative appeal in the common pleas court and weeks later also filed a complaint in the court of appeals requesting a writ of mandamus to compel the board to conduct a hearing on its second petition. The court of appeals dismissed the village's request for mandamus, because the village had an adequate remedy through its pending administrative appeal in the common pleas court.
 {¶ 28} Reversing the court of appeals, the Supreme Court explained: "common pleas courts are authorized under R.C. 2506.04 to reverse an administrative decision and remand the cause to the administrative body to conduct further proceedings on the matter.
 {¶ 29} "Moreover, the common pleas court could consider additional evidence in the administrative appeal if any of the circumstances in R.C. 2506.03(A)(1) to (5) applies. In other words, R.C. 2506.03
`contains a liberal provision for the introduction of new or additional evidence to be heard by a reviewing court.' (Citations omitted).
 {¶ 30} "Therefore, the village has an adequate remedy by way of its R.C. Chapter 2506 appeal from the board's denial of its second annexation petition to raise its claims. (Citation omitted) * * *.
 {¶ 31} The village next contends that the board's failure to conduct a hearing on its second annexation petition denied the village" its rights under the constitution." * * * [T]he village can raise these claims in its administrative appeal.
 {¶ 32} "* * *
 {¶ 33} "Based on the foregoing, the court of appeals correctly denied the village's action for extraordinary relief in mandamus. The village has an adequate legal remedy by way of its pending administrative appeal. Accordingly, we affirm the judgment of the court of appeals." Id. At 403-404.
 {¶ 34} Applying the Supreme Court's analysis in the Chagrin Falls
case, I must disagree with the majority's holding that once the matter was remanded to the board for the completion of Summers' medical examination, the common pleas court lost jurisdiction. On the contrary, not only did the common pleas court retain jurisdiction, it also had the power to enforce its order of a medical exam and further to determine the issue and amount of Summer's back pay, as well as attorney fees.
 {¶ 35} If the board, agency, or legislative body from which the appeal is brought has conducted its hearing in conformity with R.C. 2506.03, the common pleas court is confined in its review to the record of that proceeding. Gibraltar Mausoleum Corp. V. Toledo (1995), 106 Ohio App.3d 80,665 N.E.2d 273; Dvorak v. Municipal Civ. Serv. Comm. (1976),46 Ohio St.2d 99, 346 N.E.2d 157, syllabus; Sylvester v. Howland Twp.Bd. (1986), 34 Ohio App.3d 270, 272, 518 N.E.2d 36.[4]
 {¶ 36} However, should the procedural requirements of R.C.2506.03(A)(1) to (A)(5) not be satisfied by the initiating body, the common pleas court is directed to hear the appeal "upon the transcript and such additional evidence as may be introduced by any party." R.C.2506.03.[5] R.C. 2506.03 unambiguously and in mandatory language sets forth the appropriate remedy if a transcript consists of unsworn testimony or if an administrative body fails to file conclusions of fact. See, also, T.O.P. 1 Partners v. Stow (1991), 73 Ohio App.3d 24,595 N.E.2d 1044; Woerner v. Mentor School Dist. Bd. of Edn. (1993),84 Ohio App.3d 844, 619 N.E.2d 34.
 {¶ 37} State ex rel Village of Chagrin Falls, supra at 403, has characterized this statute as "`a liberal provision for the introduction of new or additional evidence to be heard by a reviewing court.' Elliotv. Bexley Planning Comm. (1995), 108 Ohio App.3d 59, 72, 670 N.E.2d 245, quoting In re Annexation of Certain Territory (1992), 82 Ohio App.3d 377,381, 612 N.E.2d 477." If the record created during the administrative proceeding below is defective, that is, if it falls under R.C.2506.03(A)(1)-(5), the common pleas court must proceed as in the trial of a civil action. This statute provides the only remedy to deficiencies that may occur in the record created before local administrative agencies acting in a quasi-judicial capacity. Simply put, R.C. 2506.03 authorizes the common pleas court to proceed as a trial court.
 {¶ 38} R.C. 2506.03, R.C. 2506.04, and the holding in Village ofChagrin Falls, supra, make clear that the common pleas court could certainly conduct a hearing and could determine the issue of Summers' reinstatement, back pay, and attorney fees. The board's transcript consisted of unsworn statements and did not include any conclusions offact. Under these circumstances, it is undisputed that Summers was entitled to a hearing and the opportunity to present new evidence under R.C. 2506.03(A)(3) and (5). Since Summers' claim was upheld on its merits, the common pleas court, as in any civil action, could proceed to determine the nature and extent of the remedy.[6] Accordingly, the trial court had jurisdiction to conduct its hearing in order to decide appellant's reinstatement, request for back pay, and attorney fees.
This de novo review was essentially what the Eleventh District Court required in Woerner v. Mentor Exempted Village School Dist. Bd. OfEducation (1993), 84 Ohio App.3d 844, 619 N.E.2d 34. The court held that when an administrative board fails to provide a transcript of the proceedings below, "the trial court could hold a hearing de novo and essentially perform the function of the administrative body."
 {¶ 39} The majority misplaces its reliance upon Butterbaugh v.Ross Cty. Bd. Of Commrs. (1992), 79 Ohio App.3d 826, which said, "[a]n action in mandamus is a proper course by which wrongfully discharged public employees may seek to compel their employer to abide by orders ofthe State Personnel Board of Review disaffirming their discharges." (Emphasis added.) In contrast, the review board in the case at bar, affirmed the discharge. So an appeal was necessary. At that point, additional evidence was properly adduced, and the case proceeded "as in the trial of a civil action."[7] There was no reason to remand it back for a decision or to require a new and separate course of action.[8]
 {¶ 40} In the case at bar, by finding that the common pleas court lost jurisdiction upon the case being remanded to the Board, the majority implicitly determined that the Board must be left to decide whether Summers should have been reinstated. Such a conclusion directly contradicts existing legal authority not only from this court and statewide but also the recent decision by the Ohio Supreme Court in Stateex rel. Village of Chagrin Falls, supra.
 {¶ 41} The majority's fundamental mistake is treating appeals from administrative agencies like all other appeals. There is much confusion about such appeals to common pleas court because of their hybrid nature. Workers' compensation cases in the common pleas court, for example, are called appeals and a notice of appeal must be filed; however, these cases receive a de novo trial in common pleas court. In other appeals from administrative tribunals, such as a personnel board of review, the statute provides the common pleas court with a range of authority depending upon what occurred at the lower tribunal. When the lower tribunal observes fundamental rights, such as the right to counsel, the right to present evidence and to cross examine witnesses, and the right to require testimony be taken under oath and when all the pertinent evidence is presented, then the common pleas court is limited to appellate review.
 {¶ 42} In the case at bar, however, it was clear from the beginning that the common pleas court was going to function more like a trial court than an appellate court. Because the testimony before the Board was not under oath and additional evidence to address back pay was necessary, the record did not meet the fundamental criteria of R.C. 2506. Under these circumstances, the statute clearly invests the common pleas court with the responsibilities of a trial court.
 {¶ 43} Failing to distinguish between general appeals and administrative appeals, the majority mistakenly relies upon the cases ofNew York Central RR Co. v. Francis (1924), 109 Ohio St. 481, 143 N.E. 187, and State ex rel Heck v. Kessler (1995) 72 Ohio St.3d 98. Neither case involved an administrative appeal.[9] The New York Central case involved a remand from the appellate court to the lower court, and Heck
was a criminal matter in which the state sought a writ from the court of appeals to force the trial judge to vacate a prior decision.
 {¶ 44} The majority ignores, moreover, this court's precedent inThe Standard Oil Co. v. Vales (Apr. 26, 1979), Cuyahoga App. Nos. 38972, 38344, 1979 Ohio App. LEXIS 10046. Procedurally, Vales is very similar to the case at bar. Vales was an administrative appeal filed in the common pleas court. This court held that a trial court retains jurisdiction in an administrative appeal to enforce its own previous orders.
 {¶ 45} In Vales, a property owner was denied special use permits by the city's planning commission. The property owner also had applied for variances from the city's board of zoning appeals, which never ruled on the request. Pursuant to R.C. 2506, the property owner appealed to the trial court, which reversed and ordered the city to issue the permits. The city appealed the trial court's judgment to this court which, among other things, remanded the case back to the trial court with instructions for it to remand the case back to the board of zoning appeals for further consideration of the variance issues.
 {¶ 46} The trial court in Vales remanded the case back to City Council to consider the property owner's request for a special use permit. The court also remanded the matter back to the zoning board on the issue of the variances. One month later, neither the city nor the board had addressed the special use or the variance issues. The property owner then filed a motion to compel the trial court to enforce its previous orders to the city and the board. The trial court granted the motion to compel. Appealing that order to this court, the city argued that the trial court did not have jurisdiction to rule on the property owner's motion to compel.[10]
 {¶ 47} Rejecting the city's argument, this court explained: "* * * appellee also stated in the brief accompanying the motion to compel that the court had the inherent power to issue the order. In this respect, the motion was analogous to a motion to show cause why the party should not be held in contempt. The Court has the inherent power to hold a party in contempt for failure to comply with a prior order. State v. Local Union5760, United Steel Workers (1961), 172 Ohio St. 75. Moreover, this power of the Court may be invoked by one of the parties to enforce an order which was entered for the benefit of that party. Cf. Beach v. Beach
(1955), 99 Ohio App. 428, 431. Thus, the trial court had jurisdiction to entertain the appellee's motion and issue its order." Vales, supra, at *12.
 {¶ 48} In the case at bar, Summers moved to show cause why he had not been reinstated and his medical examination performed. There is no material difference between Summers' motion to show cause and the motion to compel in Vales, supra. What the common pleas court ordered in the case at bar is consistent with prior rulings by this appellate court and others. I see no reason to ignore that precedent, as well as the Supreme Court case Vales relied upon.
 {¶ 49} I also disagree with the majority when it says that "[a] motion to show cause in the common pleas court was not an appropriate remedy, because the village did not violate any order of the common pleas court; the common pleas court's order was directed to the board, not the village."
 {¶ 50} The trial court's journal entry, however, does not direct specifically the board to do anything. That entry states: "CONSISTENT WITH THE OPINION OF THE EIGHTH DISTRICT COURT OF APPEALS, THE DECISION OF THE VILLAGE OF HIGHLAND HILLS PERSONNEL BOARD OF REVIEW TO TERMINATE RICHARD M. SUMMERS FROM THE HIGHLAND HILLS POLICE DEPARTMENT IS REVERSED. THE MATTER IS REMANDED FOR COMPLETION OF MR. SUMMERS' MEDICAL EXAMINATION IN CONNECTION WITH HIS RETURN TO WORK. FINAL. VOL 2421 PG 0541 NOTICE ISSUED CASE DISMISSED WITH PREJUDICE 01/20/00[.]" This journal entry specifies what is to be done, not who is to do it. The lower court's entry cannot, therefore, be criticized for being directed to the wrong entity. Moreover, the village and the personnel review board are both defendants and appellants in this case. If they were confused as to who had the responsibility for completing Summers' medical examination, they could have requested clarification from the court.
 {¶ 51} Summers should not have to seek a writ of mandamus in order to have the defendants do what the court ordered them to do in the first place. The majority offers no authority for its position that mandamus is Summers' only remedy to force the village to conduct his medical examination so that he can return to work. There is, on the other hand, impressive case law to the contrary from this court as well as the Supreme Court. State ex rel. Village of Chagrin Falls, supra; Vales,
supra. Because the common pleas court never lost jurisdiction over the appeal, the extraordinary remedy of mandamus is unnecessary in light of the common pleas court's inherent authority not only to order the medical examination but also to enforce its order that Summers be reinstated with back pay and that his attorney fees be paid.
[2] Highland also never objected below to the court's September 26th order of reinstatement, which is the order Highland has appealed. Absent an objection, Highland has waived this claimed error on appeal. State v.Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364. Moreover, it is undisputed that Summers was, in fact, finally reinstated, an act making the issue of reinstatement here on appeal moot.
[3] In that case, it was held that "if Summers signs a medical authorization for release of his most recent medical records which is shown to be job-related and consistent with business necessity and reasonably related to his back problem, and if he submits to a medical examination by a village-approved physician, the village can satisfy itself regarding its return to work requirements." Summers at *9-*10.
[4] {¶ a} In such an event the common pleas court acts as a reviewing court and must affirm the decision at issue unless it determines that it is, "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."
{¶ b} R.C. 2506.04 further provides: "Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with orders to enter an order, adjudication, or decision consistent with the findings and opinion of the court."
[5] {¶ a}R.C. 2506.03, provides, in part:
 {¶ b} "(A) The hearing of such [administrative] appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:
* * *
 {¶ c} "(3) The testimony adduced was not given under oath;
* * *
 {¶ d} "(5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from;
 {¶ e} "If any of these circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to such party." (Emphasis added.)
[6] Summers moved "for further proceedings to compel plaintiff's reinstatement with back pay and benefits."
[7] Highland also argues that the court's award of back pay constitutes an award of "damages." Highland relies on a variety of cases to support its argument, all of which are inapposite to the facts in this appeal. In each of the cases Highland cites, plaintiff was seeking damages arising either in tort or contract. An award of back pay, however, is not considered an award for damages. None of the cases Highland cites involved back pay as a result of wrongful discharge. On the contrary, an award of back pay is considered reimbursement. Monaghan v. Richley
(1972), 32 Ohio St.2d 190, 291 N.E.2d 462 ("* * * relator is not seeking to recover damages from the state, but to compel respondents to perform their legal duty to compensate him for the period of time during which he was illegally excluded from his position."). Id. at 194, 291 N.E.2d 465.
[8] Highland argues that the common pleas court could not order the reinstatement of Summers; only the administrative body can perform the "act" of reinstatement or order the payment of back pay. First, Highland ignores the distinction between ordering an act and performing the act. The court can order the village to reinstate Summers and give him back pay, but the city implements the order and actually performs the paper work of reinstating him and pays him. Similarly, the court can order a medical exam, even if it is the village that performs it. See Hungler v.City of Cincinnati (1986), 25 Ohio St.3d 338, 496 N.E.2d 912, (trial court's award of back pay to unpromoted police officers was proper); Hallv. Johnson (1993), 90 Ohio App.3d 451, 629 N.E.2d 1066, (common pleas court's order of reinstatement and back pay to a firefighter was not error); Lawson Milk Company v. City of Cleveland (July 28, 1977), Cuyahoga App. No. 36002; Ross County Commissioners v. Hall (June 12, 2001), Ross App. No. 00CA2582; Libis v. Board of Zoning Appeals (1972),33 Ohio App.2d 94, 292 N.E.2d 642; Ruggiero v. Brooklyn Board of ZoningAppeals (App. 1964), 95 Ohio Law Abs. 28.
[9] R.C. 2506 et seq. governs administrative appeals and was passed in 1957, well after the decision in New York Central, supra.
[10] Apparently, after the city appealed the trial court's ruling on the motion to compel, the board denied the request for variances and city council denied the request for special use permits. Property owner filed a new administrative appeal in the trial court, in which it appealed both decisions. The trial court reversed both decisions. The city appealed again to this court, which consolidated both of the city's appeals.